USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/3/06 TS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE INGRID OLSEN
-----------------------------------------------------------x

REYNOLD OLSEN,

                Appellant,                       05 Civ. 04591 (PKC)

      -against-                            04-B-41105 (RDD)

419 APARTMENT CORP.,                       MEMORANDUM
                                                           AND
                Appellee.                            ORDER

-----------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.

        Reynold Olsen appeals from two orders of the United States Bankruptcy Court for the Southern District of New York (Honorable Cornelius Blackshear, U.S.B.J.). The first, dated February 16, 2005, purported to memorialize a stipulation of settlement reached on the record in open Court on November 9, 2004. The second order, dated March 2, 2005, denied reconsideration of the February 16, 2005 Order.

        Mr. Olsen challenges the Court's failure to allow him to be personally heard at a November 9, 2004 hearing at which two attorneys representing Mr. Olsen in the underlying Chapter 11 proceeding purported to speak extensively on his behalf. He asserts that this was error because he had been proceeding pro se in the related Chapter 13 proceeding. He asserts that the proposed order that resulted in the February 16 Order was not served upon him. He asserts that the February 16 Order was overreaching and did not reflect the terms of the November 9 hearing. Specifically, he objects because the February 16 Order released attorneys and agents of various parties but the November 9 transcript was silent on whether persons other than parties were released. Although he initially asserted that he was

1/3/06 Copies faxed

denied effective assistance of counsel by his lawyers in the Chapter 11 proceeding, he has since abandoned this claim. (See Appellant's Reply Br. at 1; Appellant's Letter of December 13, 2005 at 2.) He raises in his reply brief a host of procedural issues not raised in his opening brief (or in the bankruptcy court) and, in the exercise of discretion, I decline to consider them. See, e.g., Knipe v. Skinner, 999 F.2d 708, 710-11 (2d Cir. 1993); Playboy Enters., Inc. v. Dumas, 960 F Supp. 710, 720 n.7 (S.D.N.Y. 1997) (collecting cases), aff'd, 159 F.3d 1347 (2d Cir. 1998).

Mr. Olsen has been an active litigant in the United States Bankruptcy Court and in the courts of the State of New York. He and his wife have had a contentious relationship with the Co-op in which they had held shares and proprietary leases. Several judges of this Court have now or had in the past matters relating to the Olsens' Co-op apartment. Except to the extent noted herein, I conclude that the history of the Olsens' litigations with the Co-op board and others is either irrelevant or immaterial to the disposition of this appeal.

As of May 2004, Mr. Olsen had before the bankruptcy court both a Chapter 11 proceeding and a Chapter 13 proceeding. At no time had Olsen sought to consolidate the two.[1] His wife—and joint debtor on the proprietary lease—had filed a Chapter 13 petition (00-15961) in December 2000 which was pending as of May 2004. On April 21, 2004, the day of a scheduled eviction, Igrid Olsen filed a Chapter 11 proceeding (04-41105).

In an order dated June 17, 2004, the bankruptcy court modified the automatic stay to permit the sale of the shares and lease in the Co-op apartment. A stay of the sale was denied by the Honorable John G. Koeltl, U.S.D.J., of this District and the cooperative apartment was sold to a third-party for a price of $1.1 million on August 3, 2004. A

---

[1] Because Appellant did not seek to consolidate the two, he is precluded from challenging the bankruptcy court's failure to do so sua sponte.

Writ of Assistance was signed by Judge Blackshear on October 13, 2004 authorizing the Co-op, under the supervision of the U.S. Marshal, to break and enter and take possession of the premises.

There remained the matter of the monetary claims of the Co-op against the Olsens. The Co-op filed separate proofs of claims against Ms. Olsen in her Chapter 11 proceeding and against Mr. Olsen in his Chapter 13 proceeding, totaling $181,740.99.

On or about September 10, 2004, the Co-op moved for entry of an order allowing its claim and directing that the claim be paid out of the proceeds of the sale of the proprietary lease and shares. (Rule 60(b) Motion at ¶ 8) On November 9, 2004, Judge Blackshear held an evidentiary hearing on the Co-op's motion. As the Co-op's lawyer described his client's position: "we're asking that the claim be fixed and that the disbursement be made from the proceeds of sale, which we're holding on to—." (Nov. 9 Tr. at 3) The court reporter's caption on the transcript reflects both Reynold Olsen's Chapter 13 case (03-41454) and Igrid Olsen's Chapter 11 case (04-41105). According to the transcript, among those present was the law firm of Robinson Brog Leinwand Greene Genovese & Gluck P.C., appearing by A. Mitchell Greene, Esq. and Christine Black, Esq., as "Attorneys for Reynold Olsen as Co-Debtor and Co-Owner with Debtor Ingrid Olsen." Mr. Reynold Olsen was also present and was identified as "Chapter 13 Debtor Pro Se".

At the hearing, Ms. Black, Mr. Olsen's counsel, objected to the relevancy of certain exhibits to be introduced at that day's hearing. (Nov. 9 Tr. at 7) Thereafter, Mr. Olsen endeavored to inject himself into the proceeding and the following colloquy took place:

> Mr. Olsen: Excuse me. The stipulation was on –
> The Court: Excuse me. Don't interrupt him. You'll get your opportunity to speak. You're represented by counsel.
> Mr. Olsen: In my chapter 13, I'm self-represented. In this chapter 11, I'm represented by –

> The Court: Who are you represented by?
> Ms. Black: I represent Mr. Olsen, your Honor.

(Nov. 9 Tr. at 12.) Thereafter, Ms. Black continued to speak for Mr. Olsen. (See, e.g., id. at 20, 22-27, 29-30, 32-34) At one point, Ms. Black asked the Court "[c]ould I have a minute, Your Honor?" (Id. at 33) The transcript reflects a pause, following which Ms. Black reported "We're not contesting the maintenance, Your Honor, but my client wants to have it noted that Warshaw Burstein is holding specific funds in escrow . . . ." (Id. at 34) Ms. Black argued that the Co-op's attorneys' fee application ought to be denied in part. (Id. at 37-42) Mr. Greene, co-counsel for Mr. Olsen, also joined in the argument and discussion on the record. (Id. at 48-54)

The discussion on the record evolved into a discussion of a possible negotiated resolution of the disputed matters. Counsel for the Co-op, Mr. Backenroth, and Mr. Olsen's two attorneys, Ms. Black and Mr. Greene, summarized and confirmed the proposed agreement on the record. (Id. at 56-57) The colloquy went on to discuss a second escrow account; the Court recommended that those funds remain in escrow. (Id. at 57-58)

With all issues apparently settled, the Co-op's counsel asked that the record be "so order[ed]", to which the Court responded, "I don't like to so order such a disjointed record, but I will do so." (Id. at 58) Mr. Olsen's counsel advised the Court as follows: "Your Honor, we're going to submit a formal order anyway, because of the problems, so that there is an actual order that somebody can make sense of on the record." (Id. at 59)

Thereafter, on January 31, 2005, counsel for the Co-op – not counsel for Mr. Olsen – served a proposed order with a Notice of Settlement styled as "Order Memorializing Stipulation Of Settlement On The Record Fixing And Allowing The Claim Of 419 Apartment Corp., Directing The Release Of The Escrow Accounts And Related Relief."

The Affidavit of Service reflects service by hand on both "Reynold A. Olsen" at the address of his former Co-op apartment and also service on his attorney, A. Mitchell Greene, as well as service on his wife's attorney. On February 16, 2005, Judge Blackshear signed the proposed order that had been submitted. The February 16 Order adds greater contour and precision to the terms orally agreed to at the November 9 hearing. Specifically, the Order recites, among other things, the following:

> Ordered, that in full settlement, satisfaction and release of any and all claim of whatever nature of 419's Claim against the Debtor and the Co-Owner, and in full settlement, satisfaction and release of any and all claim of whatever nature of the Debtor and the Co-Owner's claims against <u>419, its attorneys and/or agents</u>, Warshaw Burstein is authorized to release to 419 from the Sale Proceeds Escrow the sum of $302,000 of which $215,000 has already been dispersed pursuant to the Stipulation (the "Allowed Claim"). (emphasis added.)

Thereafter, Olsen, proceeding through counsel, moved under Rule 60(b), Fed. R. Civ. P., and Rule 9024, Fed. R. Bank. P., for vacatur and/or reconsideration of the February 16 Order. In that filing, his attorneys advised the court that "It is Reynold's contention that the settlement provided that 419, the Debtor and Reynold released each other, and there was no release and indeed the record does not support the broad releases provided to 419's attorneys and agents." The motion papers submitted by his counsel, and never renounced by Mr. Olsen, states as follows: "During the course of the day, the parties, counsel for the Debtor, Reynold and his counsel, counsel for 419 and 419's bankruptcy counsel, settled the Claim." The clear implication of the statement is that Mr. Reynold Olsen personally participated in and approved the November 9 settlement. Notably, no claim is made in the Rule 60(b) motion that Mr. Olsen or his counsel did not receive the Notice of Settlement of the proposed order in a timely and proper manner.

By Order dated March 2, 2005, Judge Blackshear denied Olsen's Rule 60(b) motion.[2] On or about March 7, 2005, Olsen filed a Notice of Appeal from the February 16 and March 2 Orders.

On appeal, Mr. Olsen argues that the oral agreement at the November 9 hearing did not contemplate his releasing his claims against the Co-op's attorneys and agents and that any settlement that includes such a release is overreaching. He further argues that there was no compliance with Rule 9019 governing the approval of compromises. The claims fail for several reasons. The transcript of the November 9 hearing reflects an intention to fully and finally resolve all issues between the parties: "With the exception of the appeal, there will be no further issues or claims between the parties, and if that is not pursued, then there will no further issues [sic] between the parties" (Nov. 9 Tr. at 55) The February 16 Order merely restates in more complete language that which was agreed to on the record on November 9. Because, in general, an agent maybe expressly or impliedly indemnified for acts taken by the agent arising out of the agent's actions within the scope of his authority, a claim asserted against the agent would be tantamount to a claim against the principal. See generally Restatement (Second) of Agency § 439(c). See also Admiral Oriental Line v. United States 86 F.2d 201, 202 (2d Cir. 1936) (L. Hand, J.) ("An agent, compelled to defend a baseless suit, grounded upon acts performed in his principal's business, may recover from the principal the expenses of his defense.") In the context of this case, a release of the Co-op which did not also release the Co-op's impliedly indemnified agents would have left the Co-op exposed to further liability to Mr. Olsen. While the transcript of

---

[2] Judge Blackshear recites that Olsen, through Ms. Black, had submitted papers in opposition to the Notice of Settlement but, as of March 1, 2005, those papers had not been filed on the ECF system. No party to this appeal has cited or quoted the content of such a submission and I do not consider it for any purpose.

November 9 did not expressly provide for the release of a party's agents or attorneys, it was not unreasonable or overreaching for the formal written order to have included it.

Olsen argues that because the proposed order and the Notice of Settlement of the proposed order were served by counsel for the Co-op rather than the trustee and was not served on all creditors, it violated Rule 9019 of the Federal Rules of Bankruptcy Procedure.[3] But the Order of February 16 was documentation of the precise terms of an agreement the general outlines of which had been approved on November 9, and, rather than attack the November 9 agreement, Olsen embraces it and seeks to have this Court reform the February 16 Order to more closely reflect what he views as its terms.[4] The February 16 Order was entered on notice to Mr. Olsen's attorneys who made no claim to the contrary in their Rule 60(b) motion. In any event, any deviation from the letter of Rule 9019 was harmless because the objecting person, i.e., Reynold Olsen, was on notice and given an opportunity to be heard, first, in advance of the entry of the February 16 Order and, second, on the subsequent motion to reconsider and/or for relief under Rule 60(b). See In re Sherman Plastering Corp., 340 F.2d 915, 918 n.2 (2d Cir. 1965) (interpreting the predecessor to Rule 9019, the Court noted that "interested parties have usually been held not to have been prejudiced when they were present at the negotiation and formation of the compromise and thus had notice coupled with an opportunity to object.").

---

[3] Rule 9019(a) provides that: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."

[4] Indeed, Mr. Olsen relies (in his Reply Br. at 5-6) upon statements made on his behalf by A. Mitchell Greene, Esq. in the Rule 60(b) motion. Olsen now seeks to have the agreement in the November 9, 2004 transcript enforced and argues that the February 16, 2005 Order should be reformed because, among other things, it affords the Co-op broader protection than the words of the November 9 transcript.

Compromises are favored in bankruptcy. See 10 Collier on Bankruptcy ¶ 9019.01 (15th ed. 2003). This settlement was well within the range of reasonableness. See In re WT Grant Co., 699 F.2d 599, 608 (2d Cir.), cert. denied, 464 U.S. 822 (1983).

I have considered the balance of Reynold Olsen's arguments – except those raised for the first time in his reply brief which I need not and do not consider – and find them to be without merit. The Orders of February 16, 2005 and March 2, 2005 are AFFIRMED. Any and all other relief sought by the parties, including under Rule 11, Fed. R. Civ. P., is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
January 3, 2006